UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | Crim. No. 08-205(RWR) |
| ) | |
| ALFRED THOMPSON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S REPLACEMENT BRIEF ON REMAND**

This case is before the Court on a remand from Mr. Thompson's direct appeal, in which he asserted that he was prejudiced in his decision to go to trial by his counsel's deficient performance in advising him with respect to the government's plea offers. The Court of Appeals remanded for further proceedings to determine whether Mr. Thompson was denied the effective assistance of counsel.

Mr. Thompson submits this pleading to provide the Court with the procedural background of the case and establish the need for an evidentiary hearing. It replaces the brief on remand filed on June 2, 2014, and includes an sworn declaration from Mr. Thompson that was not included with the prior filing.[1]

---

[1] The original signed declaration that counsel has in her files does not have the date filled in. Counsel has determined from Mr. Thompson that he signed the declaration on November 26, 2014, and has therefore used that date on the electronic signature ("/s/") version of the declaration filed herein.

**PROCEDURAL HISTORY**

In June 2008, the police arrested Alfred Thompson after a foot chase.  During the chase, Mr. Thompson tossed a bag later found to contain 53.6 grams of cocaine base and 4 grams of marijuana.

On July 10, 2008, Mr. Thompson was indicted on one count of possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii), and one count of possession of marijuana, in violation of 21 U.S.C. § 844(a).

On October 21, 2009, appellant was convicted on both counts after a jury trial before the Honorable James Robertson.

At the sentencing on January 5, 2010, Judge Robertson sentenced appellant to the mandatory minimum term of 20 years in prison.

On appeal, Mr. Thompson sought a remand on two ineffective assistance of counsel claims:  1) that he was not properly advised with respect to the government's 10-year-minimum plea offers; and 2) that defense counsel failed to present all information relevant to his motion to continue sentencing such that Mr. Thompson lost the opportunity to be sentenced to a 10-year mandatory minimum under the Fair Sentencing Act (FSA), enacted into law seven months after his sentencing.

As to the FSA claim, the government argued, and the D.C. Circuit agreed, that it should be denied on the merits.

As to the claim concerning the plea offers, the government argued:

> Because the record is undeveloped, this Court has no way of determining whether the government extended a formal plea offer [on the two dates cited by Mr. Thompson] or the nature of any communications that may have taken place between appellant and trial counsel. Because of the silence in the record, this Court cannot determine whether appellant is, or is not, conclusively entitled to relief. Accordingly, remand is required for the district court to receive evidence from appellant, the government, and trial counsel on these issues.

(Govt. Br. on Appeal:11-12).

The D.C. Circuit, noting the parties' agreement that the record was insufficient to resolve the claim concerning the plea offers, remanded "'for whatever proceedings are necessary to determine whether [Thompson] was denied his constitutional right to effective assistance of counsel, which may . . . include an evidentiary hearing' in the district court's discretion." United States v. Thompson, 721 F.3d 711, 714 (D.C. Cir 2013) (quoting United States v. Bell, 708 F.3d 223, 226 (D.C. Cir. 2013)).

## STATEMENT OF FACTS

On June 17, 2008, as police attempted to conduct a traffic stop of Mr. Thompson, he tossed a bag of crack and marijuana over the roof of the car and fled, picking up the bag and dropping it again during the course of the ensuing foot chase. He was chased into a nearby house, where the police apprehended him, face down

3

on the ground, sweating and panting. Upon his arrest, he was found to be in possession of $2736.

**A. Pretrial Proceedings.**

At his initial appearance on June 23, 2008, Mr. Thompson appeared with his retained attorney, Mr. Ross Hecht, and was released under the High Intensity Supervision Program. On July 10, 2008, appellant was indicted in this case for PWID cocaine base (more than 50 grams) and possession of marijuana. He appeared with Mr. Hecht for arraignment in magistrate's court on July 21, 2008.

By the time of the first status hearing before Judge Robertson, Mr. Thompson had been arrested for a 2007 murder and was being held in D.C. Superior Court on that charge, which Judge Robertson characterized as "a charge that pretty much overwhelms the charges that are brought against him in this court." (8/7/08:1). Defense counsel asked for preparation of "a limited PSI" in order to "[s]ee where he falls on the guidelines": "Certainly my client is intelligent enough to want to discuss a plea with the government. [I]t might be something that he finds palatable, depending on the guidelines and certain other factors." (8/7/08:2-3) (preliminary PSI "will allow us to evaluate the merits of a plea a little more intelligently, and I know Mr. Thompson wants all available options . . . ."). (8/7/08:3). Judge Robertson referred the case for preparation of a limited

PSI[2] and set a hearing date of November 12, 2008, "for a status and possibly a plea, but we'll see what happens between you and the government between now and then."  (8/7/08:3).

Defense counsel was unable to appear on the original status date (11/12/08:1).  On the rescheduled date, stand-in attorney Harry Tun asked for another status date to allow Mr. Thompson's murder case to play out since, "[d]epending upon what happen[s] in that case, this case will probably be moot because of the severity in the sentencing situation in Superior Court."  (12/1/08:3).  Judge Robertson agreed "that if he is convicted of felony murder, it sort of moots whatever is going on here" and asked that rather than continue to have statuses, the parties submit "brief written status reports every, let's say 60 days, until there's some clarity across the street."  (12/1/08:3).  Mr. Tun said he would "take the lead on that, I'll make sure that it happens within 60 days."  (12/1/08:3-4).  The Court ordered those reports to begin February 1st.  (12/1/08:5).

---

[2] Pursuant to this order, the Probation Office submitted a "Guideline/Criminal History Calculation" memorandum to the court on September 17, 2008, indicating that, if convicted at trial, Mr. Thompson would be at an Offense Level 30 and Criminal History Category III (corresponding to a guideline range of 121-151 months).  If he pleaded guilty and received a 3-level reduction for acceptance of responsibility, his guideline range would be his 120-month mandatory minimum (increased from an otherwise applicable 87-108 months).  This memorandum is available through probation but is not referenced on the public docket and it is not clear that either counsel saw it.  It was never mentioned again except once by the Court in passing out of Hecht's presence.  (11/12/08:5).

5

No action occurred on the docket for five months. On April 30, 2009, the district court issued an order for the parties to file their first status report "forthwith" and every 60 days thereafter. (Docket Item 5).

On May 11, 2009, AUSA Bridgette Crafton filed a status report via a letter to Judge Robertson (Docket Item 6): Noting that Mr. Thompson's murder trial was set to begin in Superior Court on January 19, 2010, AUSA Crafton explained that she had been advised by her supervisor that she could not allow this matter to track the Superior Court case without a plea agreement in place and had been told by the AUSA handling the murder case that Mr. Thompson was not interested in a global disposition. AUSA Crafton further reported that on April 10, 2009, she had sent a letter to Mr. Hecht explaining that the government could no longer consent to this matter trailing the murder case, and making a plea offer that expired on April 30, 2009. She had contacted defense counsel's office to obtain his position regarding the plea and status report, but "I was advised that Mr. Hecht has been in a three week murder trial and that he would contact me on Thursday [May 14th]." (Docket Item 6 at 1). With the report overdue, the prosecutor filed her letter on May 11th, requesting an early June status date to "give both parties an opportunity to see if this matter will resolve by way of a plea or whether the matter will have to be scheduled for trial." (Docket Item 6 at 2).

A status hearing was held on July 2, 2009.  Mr. Hecht reported that, "in talking with my client he is not amenable to a plea.  It would be his preference to have the homicide trial resolved first because obviously that causes him great anxiety.  We sort of believe if he is found guilty on that case, that kind of moots this case out."  (7/2/09:2).  Counsel asked the new prosecutor, AUSA Stephen Spiegelhalter, to review the file for any additional discovery before any motions deadline.  (7/2/09:4).  The court set motions to be filed by August 21, 2009, and set trial for September 29, 2009.  (7/2/09:4).

The government filed a motion to allow it to present evidence of appellant's prior drug conviction as well as proposed voir dire and jury instructions.  There were no defense filings.

Six days before the trial date, the government filed an emergency motion for a status hearing to determine whether defense counsel intended to move for a trial continuance as previously indicated.  (Docket Item 12).  Judge Robertson issued an order pushing the trial back three weeks to October 19, 2009.

On October 13, 2009, six days before trial began, the government filed an Information as to Prior Conviction under 21 U.S.C. § 851  (Docket Item 14), doubling appellant's mandatory minimum exposure from 10 years to 20 years.

7

**B.   The Trial.**

The case proceeded to trial, where the government's case was quite overwhelming.  Officers Kevin Naus and Brian Brown testified as to the chase and apprehension of Mr. Thompson.  Defense counsel's attempt to raise a doubt as to identity -- on the theory that Brown's lookout had the perpetrator wearing a black hat, yet no such hat appeared in the seized-property photograph taken at the scene -- blew up when the government recalled Naus to put into evidence the pages of the 7D property book where Naus had listed, and Mr. Thompson had signed for, "one black hat."  (10/20/09:4-8). Nor did the only defense witness -- Tanya Hawkins was called to say she had given Mr. Thompson $1800 to deposit for her that day -- provide an innocent explanation for the seized cash:  Her testimony as to the denominations she gave Mr. Thompson (10/20/09:106-08) did not match the money that the police found on him (10/19/09pm:37).

Indeed, Judge Robertson made clear his view that the defense had had nothing of substance to work with, telling counsel after closing arguments:

> Mr. Hecht, I'm giving you the Cookie Lavagetto award. . . . Cookie Lavagetto was the manager of the Washington Senators from 1957 to 1960. . . .[H]e's famous for his saying . . . : "You've got to go with what you've got, because you can't go with what you don't got."  That's the Cookie Lavagetto award.

(10/20/09:171).

The jury convicted Mr. Thompson on both counts and specifically found that the cocaine base (which the DEA chemist testified weighed 53.6 grams (10/20/09:29)) weighed 50 grams or more.

**C.   The Sentencing**.

Like the sentencing calculation done pretrial, the PSR calculated an Offense Level of 30 and Criminal History Category of III, corresponding to a guideline range of 121-151 months; however, because of the filing of the § 851 notice just before trial, the enhanced mandatory minimum of 20 years became the guideline sentence.  (PSR ¶ 92).  The PSR noted that the same amount of powder cocaine would have subjected appellant to a range of 27-33 months.  (PSR ¶ 111).

At sentencing on January 5, 2010, Mr. Hecht made an oral motion for a continuance, explaining that there was legislation moving through the Congress to equalize the penalties for crack and powder cocaine.  (1/5/10:3-5).  Judge Robertson characterized the motion as "the legal equivalent of a Hail Mary pass" and indicated that he was not willing to wait for Congress "to act on something that doesn't seem to have any legs or . . . imminent likelihood of success, as far as I know."  "[I]t could be St. Swithen's Day.  It could be a decade from now.  It could be never."  (1/5/10:5-8).  Judge Robertson therefore imposed the then-applicable mandatory minimum sentence of 20 years in prison.

Mr. Thompson was convicted in the Superior Court murder case on February 16, 2010.  On May 10, 2010, he was sentenced to 33 years in that case, consecutive to the 20-year sentence in this case, for a total of 53 years in prison.  See D.C. Superior Docket in United States v. Alfred L. Thompson, 2008 CF1 17330.  Mr. Thompson was transferred out of this jurisdiction just weeks before enactment of the FSA, under which the applicable minimum penalty (the penalty for 53.6 grams of crack after filing of a § 851 notice) was reduced from 20 years to 10 years.

Although Judge Robertson had encouraged defense counsel to move for a reduced sentence if the statutory minimum changed (1/5/10:7-8), defendants like Mr. Thompson -- whose convictions were not yet final at the time the FSA was enacted but who had been sentenced pre-FSA (i.e., before August 3, 2010) -- have been held not to be entitled to a resentencing under the FSA.  See, e.g., United States v. Fields, 699 F.3d 518, 522 (D.C. Cir. 2012).

**D.   The Appeal.**

As to the claim now on remand, Mr. Thompson argued on appeal that he was entitled to a hearing on his claim that defense counsel had failed to timely inform him of the April 10, 2009, plea offer, and another plea offer on October 15, 2009, and that, if he had been properly advised as to his plea exposure versus his trial exposure, he would have pleaded guilty.

As legal authority for this claim, Mr. Thompson argued as follows:  Defense counsel has been ineffective if his performance fell below an objective standard of reasonableness and if there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 688, 687-94 (1984).  A reasonable probability of a different result "is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

Specifically, Mr. Thompson noted that a defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process" and that "[d]uring plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'"  Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012).  As a general rule "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  Missouri v. Frye, 132 S. Ct. 1399 (2012) (defense counsel who allowed offer to expire without advising the defendant or allowing him to consider it did not render the effective assistance the Constitution requires).

Likewise, defense counsel's performance can be deficient if he misinforms the defendant as to his exposure upon accepting or rejecting a plea offer.  See Lafler, 132 S. Ct. at 1384 (parties agreed counsel deficient in advising defendant to reject plea offer on grounds he had no trial exposure given location of

11

victim's wounds); United States v. Gaviria, 116 F.3d 1498, 1511-14 (D.C. Cir. 1997) (counsel deficient in overestimating penalty exposure under plea offer).  Put simply: "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.  If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence."  Lafler, 132 S. Ct. at 1387.

Both parties agreed on appeal that the record was insufficient to resolve this claim, and the D.C. Circuit therefore remanded it to this Court for a hearing.

On June 2, 2014, defense counsel filed a Brief on Remand[3] that did not include an affidavit from Mr. Thompson, representing that the government did not object to the supplementing of that pleading with such an affidavit in advance of the filing of the government's brief.  (Docket Item 58 at 13, n.2).  On July 15, 2014, before the government's briefing date, the parties filed a joint motion to resolve the remand through acceptance of a stipulated disposition.  On November 14, 2014, this Court denied that motion on the ground that it lacked authority to resolve this remand through the proposed stipulated resentencing.

---

[3] This document is listed on the docket as "Response to Order of the Court."

The Court subsequently ordered Mr. Thompson to complete his briefing by December 12, 2014, and the government to file its brief by January 12, 2015. This brief is submitted pursuant to that Order and is intended to replace the brief filed June 2, 2014.

## AN EVIDENTIARY HEARING IS NECESSARY
## TO RESOLVE MR. THOMPSON'S CLAIM ON REMAND

At an evidentiary hearing, appellant will be able to demonstrate that he was not adequately advised with respect to the decision whether to plead guilty or go to trial and that, if he had fully understood his trial and plea exposure, he would have entered a guilty plea requiring only a 10-year mandatory minimum.

Here, the record establishes that on April 10, 2009, AUSA Crafton sent a letter to counsel Hecht indicating that she could no longer allow this matter to trail the Superior Court case and including a plea offer that expired on April 30, 2009. (Docket Item 6 at 1). Attached to Mr. Thompson's affidavit is that April 10, 2009, plea offer, which called for a guilty plea to Count 1 only, with the government agreeing not to file a § 851 notice. Under that offer, Mr. Thompson's mandatory minimum sentence would have been 10 years.

Mr. Thompson is prepared to testify at a hearing that this offer was not communicated to him by April 30, 2009, and the attached jail visitation records are corroborative of that assertion. (Thompson Affidavit ¶¶ 1-2). Further corroboration

13

comes from AUSA Crafton's report that as of May 11, 2009 -- eleven days after the April 10th offer expired -- she had been unable to reach defense counsel to determine "his position regarding the plea." (Docket Item 6 at 1).

Also attached to Mr. Thompson's affidavit is an e-mail printout showing that on Thursday, October 15, 2009, two days after the government filed its § 851 notice, doubling Mr. Thompson's mandatory minimum from 10 to 20 years, there were plea communications between AUSA Spiegelhalter and defense counsel in which the prosecutor made an offer to withdraw the § 851 notice and allow Mr. Thompson to plead to Count 1 (a 10-year minimum instead of a 20-year minimum). With the trial scheduled to begin Monday the 19th, the prosecutor's e-mail set the next day (Friday) as the deadline for nailing down the details and getting a signed document. Again, Mr. Thompson is prepared to testify that this offer was not timely communicated to him and the attached jail visitation records establish that he did not see counsel between the time this offer was made and when he was brought to the courthouse the morning of trial. (Thompson Affidavit at ¶¶ 1, 3).

Mr. Thompson will testify that Mr. Hecht did talk to him about a 10-year plea offer when he was at the courthouse for trial but that he did not fully understand his trial exposure. He will testify that he did not understand the significance of a § 851 notice until after the trial and that it was not until well after

14

his sentencing that he understood that such a filing had been made before, not after, his trial. (Thompson Affidavit ¶ 4). Mr. Thompson asserts (Thompson Affidavit ¶ 5) – and based on undersigned counsel's conversation with Mr. Hecht on January 8, 2014, she understands that he agrees – that if Mr. Thompson had fully understood his trial exposure, he would have opted to accept a guilty plea under which the § 851 notice would be withdrawn.

Such testimony will establish <u>Strickland</u> prejudice: "In the context of pleas[,] a defendant must show the outcome of the plea process would have been different with competent advice." <u>Lafler</u>, 132 S. Ct. at 1384-85 (where defendant claims deficient performance led him to stand trial, defendant must show that, but for deficiency, there is reasonable probability that defendant (and court) would have accepted terms of plea and that conviction or sentence, or both, would have been less severe).

Even if Mr. Thompson was "not amenable to a plea" in July (7/2/09:2) -- before the § 851 notice was filed and when, according to probation's pretrial calculation, his guideline range would have been 121-151 months (120 months minimum) if convicted at trial versus 120 months (minimum) if he pleaded guilty -- that says nothing about what his position would have been once his trial exposure increased to 240 months. <u>Cf.</u> <u>United States v. (Chevalier) Thompson</u>, 27 F.3d 671, 677 (D.C. Cir. 1994) ("the choices that Thompson *actually made* do not necessarily shed any

15

useful light on the choices that he *would have made* if he had been properly advised") (emphasis in original).  It is one thing to roll the dice when, due to a 10-year mandatory minimum, there is virtually no benefit to be gained by pleading guilty.  It is quite another when losing at trial (as compared to pleading guilty) means 10 extra years in prison.  Given the additional 10-years of mandatory exposure brought on by the filing of the § 851 notice six days before trial, and the strength of the case against him, Mr. Thompson will be able to demonstrate a reasonable probability that he would have taken a 10-year-minimum deal but for his lack of understanding of his options.

At this point, of course, the record is inadequate to make a finding one way or the other.  As the government conceded on appeal, the record is undeveloped as to any plea offers and communications that may have taken place between Mr. Thompson and trial counsel and, for that reason, it is necessary that this Court "receive evidence from appellant, the government, and trial counsel on these issues."  (Govt. Br. on Appeal at 11-12).

**CONCLUSION**

This Court should hold an evidentiary hearing on Mr. Thompson's claim of ineffective assistance of counsel.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
LISA B. WRIGHT
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500
